## Appeal of HAMPTON CO.

Docket No. 2054.   Submitted May 28, 1925.   Decided July 11, 1925.

1. The taxpayer is entitled to have proved cash value of intangible assets acquired in exchange for stock included in the computation of invested capital subject to the limitations prescribed by section 326(a)(4) of the Revenue Act of 1918.

2. Without proof of cost, the unextinguished useful value of buildings and equipment demolished in making improvements is not a deductible loss.

*Robert C. Shelley, Esq.*, for the taxpayer.
*M. N. Fisher, Esq.*, for the Commissioner.

Before STERNHAGEN, LANSDON, and GREEN.

This appeal is from the Commissioner's determination of a deficiency in income and profits taxes for the year ended December 31, 1919, in the amount of $92,198.90, all of which is in controversy. The asserted deficiency arises from disallowance by the Commissioner (1) of the alleged value of good will claimed by the taxpayer for invested capital purposes; (2) of a deduction for loss of unextinguished useful value resulting from the demolition of buildings and plant equipment in the year in question; and (3) of the deduction for loss in operating a farm owned by the taxpayer. From the oral and documentary evidence and the allegations of the petition admitted by the Commissioner, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a voluntary trust association organized December 19, 1909, under the laws of Massachusetts, as the successor of the Hampton Co., a corporation, organized in 1900, with its principal office at East Hampton, Mass., where it is engaged in the manufacture and sale of fine yarns.

2. At the date of its organization the taxpayer issued 6,000 shares of common stock, of no par value, in exchange for all the tangible and intangible assets of the predecessor corporation. The certificates of stock so issued were distributed to the shareholders of the corporation in proportion to their stockholdings, and such distribution resulted in no changes in the beneficial interest of any individual in the assets involved. The parties agree that the fair market value of the tangible assets purchased from the corporation by the taxpayer was $1,244,532.54.

3. The net earnings of the taxpayer and of the predecessor corporation for the years 1906 to 1914, inclusive, were as follows:

| Year. | Corporation. | Year. | Association. |
|-------|-------------|-------|-------------|
| 1906 | $156,824.98 | 1911 | $297,198.32 |
| 1907 | 151,738.54 | 1912 | 345,340.73 |
| 1908 | 167,020.42 | 1913 | 444,989.69 |
| 1909 | 197,551.59 | 1914 | 282,720.86 |
| 1910 | 374,494.18 | 1915 | 211,086.75 |

4. The fair market value of the intangible assets acquired by the taxpayer from the predecessor corporation at the date of organization was $425,363.50.

5. During the fiscal year ended January 31, 1919, the taxpayer expended $179,450.36 in remodeling and reconstructing its power-house building and equipment, and, of this amount, it capitalized $87,647.79 and charged $91,802.57 to expense.

6. In its income and profits-tax return for the calendar year ended December 31, 1919, the taxpayer included a good will value in the amount of $1,094,000 in the computation of its invested capital, and deducted the amount of $91,802.57, the cost of remodeling its power house, as an ordinary and necessary expense in the operation of its business for the year in question. Upon examination and audit of this return the Commissioner excluded the amount claimed for good will from invested capital, and held that the amount of $91,802.57 was neither an ordinary and necessary operating expense nor a loss of useful value resulting from demolition for the year in question but that it was in fact a capital expenditure. The exclusion of the taxpayer's good will from invested capital and the disallowance of $91,802.57 as an ordinary and necessary expense, together with other adjustments not in controversy, resulted in additional income and profits-tax liability of the taxpayer in the amount of $92,198.90. From such deficiency, as asserted in a letter mailed to it on December 19, 1924, the taxpayer takes this appeal.

DECISION.

The determination of the Commissioner is approved in part and disapproved in part. The deficiency, if any, should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

OPINION.

LANSDON: At the hearing of this appeal the taxpayer abandoned all its allegations of error, except with respect to invested capital and the disallowance of $91,802.57 deducted from its gross income

in its income and profits-tax return for the year ended December 31, 1919, as ordinary and necessary expenses. The Board, therefore, considers only the two remaining issues.

The Commissioner admits that at the date of its organization the taxpayer acquired tangible assets from a predecessor corporation of the value of $1,244,532.44. During the five years preceding the acquisition of such assets, the predecessor corporation had average annual net earnings in the amount of $209,525.94. During the first five years of its operations, the taxpayer had annual net earnings in the amount of $316,267.27, and, for the year involved in this appeal, it had net operating profits in the amount of $760,011.80, at which time it owned net tangible assets in the amount of $3,383,146.71.

On the proved relations between its average annual net earnings and the value of its tangible assets it is clear that a substantial portion of the taxpayer's income must be ascribed to its intangible assets. Section 326 (a) (4) of the Revenue Act of 1918 provides:

As used in this title the term " invested capital " for any year means (except as provided in subdivisions (b) and (c) of this section) : * * * Intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest.

In deciding the *Appeal of Dwight & Lloyd Sintering Co.*, 1 B. T. A. 179, the Board said:

The formula for determining the value of intangible assets by attributing to tangible assets a certain percentage of return over a period of years and capitalizing the balance on a reasonable percentage basis has long been recognized.

The Board finds that the intangibles acquired from the predecessor corporation had value in the amount of $425,363.50. The taxpayer enjoyed constantly increasing prosperity from the date of its organization until 1919, at which date it had intangible assets greatly in excess of the value acquired in 1910.

The Commissioner disputes none of the facts of this appeal in respect to the value of tangible assets or the amounts of net earnings, but refuses to allow any value for intangibles in his computation of the taxpayer's invested capital for the year 1919. The only ground for such refusal is contained in a report by a revenue agent who examined the books of the taxpayer. This agent states that in his opinion the large earnings of the association during the years 1918 and 1919 are attributable to the activities of its principal officers rather than to any income-earning value in its good will, and

that the payment of large salaries to such officers during the years in question supports his conclusion. The Board is unable to accept the opinion of the revenue agent as determinative of the issue here involved.

The statutory rule for ascertaining the par value of no par value shares is set forth in section 325(b) of the Revenue Act of 1918, which reads as follows:

For the purposes of this title, the par value of stock or shares shall, in the case of stock or shares issued at a nominal value or having no par value, be deemed to be the fair market value as of the date or dates of issue of such stock or shares.

As the 6,000 no par value shares of stock of the taxpayer were issued in exchange for assets which had a cash value of $1,669,895.94, that amount is the fair market value of such shares as of the date of their issue. The Board is of the opinion, therefore, that it must be deemed that the par value of the shares of the taxpayer, issued without par value, on December 19, 1909, was $1,669,895.94, and that, inasmuch as no additional shares were issued prior to March 3, 1917, the stock outstanding at that date must be deemed to have had par value in such amount. Hence it follows that 25 per cent of the par value so ascertained, or the amount of $417,473.98, which is the lowest result ascertainable under the limitations prescribed by section 326(a) (4) of the Revenue Act of 1918, should be included as the value of intangible assets in the computation of the taxpayer's invested capital for the calendar year 1919.

During the year 1919 the taxpayer expended $179,450.36 in reconstructing its power house and equipment, and it claims the right to deduct a part of that expenditure in the amount of $91,802.57 from its gross income in its income and profits-tax return, either as ordinary and necessary expenses or as loss of unextinguished useful value resulting from the demolition of assets. No evidence either of the original or depreciated cost of the demolished assets was offered. The Board is of the opinion that, in the absence of convincing proof, no loss representing the unextinguished depreciated cost of assets demolished in the year in question should be allowed.